The levy upon the real estate is *prima facie* a satisfaction of the decree, therefore the machines are *prima facie* free. The defendants, as the case now stands, have *prima facie* the right to have the injunction dissolved. If this right is varied by further developments or different results, compensation can be made to the orator in the accounting with less danger of injustice than the continuance of the injunction would involve.

Motion granted and injunction dissolved.

---

THE HARRISBURG.*

(*Circuit Court, E. D. Pennsylvania.* February 2, 1883.)

1. ADMIRALTY JURISDICTION—PROCEEDING FOR TORT IN CASE OF DEATH UPON NAVIGABLE WATERS.

In the admiralty courts of the United States, the death of a human being upon the high seas, or waters navigable from the sea, caused by negligence, may be complained of as an injury and the wrong redressed under the general maritime law.

*The Towanda,* 34 Leg. Int. 394, followed.

COLLISION—LIMITATION OF ACTION—LIBEL IN REM.

Where a death was caused by a collision, in 1877, near the Cross Rip light-ship, in Nantucket sound, the offending vessel being enrolled in Philadelphia, and a libel *in rem* was filed in the district court for the eastern district of Pennsylvania in 1882, by the widow and daughter of the man so killed, their cause of action does not depend upon the statute laws of either Massachusetts or Pennsylvania, and the limitation of one year in the statutes of those states does not operate as a bar.

In Admiralty.

Appeal by the steamer Harrisburg from the decree of the district court awarding $5,100 damages against her upon a libel, filed by the widow and daughter of the late first officer of the schooner Tilton, whose drowning was caused by a collision

The material facts are as follows:

Near the Cross Rip light-ship in Nantucket sound, a sound of the sea, embraced between the coast of Massachusetts and the islands of Martha's Vineyard and Nantucket, parts of Massachusetts, on the sixteenth of May, 1877, a collision occurred between the schooner Tilton and the steamer Harrisburg, which resulted in the loss of the schooner and the drowning of six of her crew.

A libel by the schooner was determined against the steamer, (9 FED. REP. 169,) and its liability for the consequences of the collision was not contested

*Reported by Albert B. Guilbert, Esq., of the Philadelphia bar.
Reversed. See 7 Sup. Ct. Rep. 140.

in the present proceeding. On February 25, 1882, Emma S. Rickards, and Mary E. Rickards, by her next friend, Emma S. Rickards, widow and daughter of Silas E. Rickards, deceased, late first officer of the schooner Tilton, filed a libel *in rem* against the steamer Harrisburg, for damages for his death, occasioned by the collision. The steamer was engaged in the coasting trade, and belonged to the port of Philadelphia, where she was enrolled.

No innocent rights to or in the steamer had arisen between the date of the collision and the exhibition of the libel, and it did not appear that any inconvenience resulted to the respondents by the laches of libelants.

The district court entered a decree in favor of the libelants, and damages were assessed at $5,100.

*Curtis Tilton* and *Henry Flanders*, for libelant.

In the admiralty courts of the United States the death of a human being upon the high seas, or waters navigable from the sea, caused by negligence, may be complained of as an injury, and the wrong redressed under the general maritime law. *The Towanda,* (Cir. Ct. Dis. Pa.) 23 Int. Rev. Rec. 384; 34 Leg. Int. 394; *The Chas. Morgan,* 18 Law Reg. 624; *The Sea Gull,* Chase, Dec. 148; *The Highland Light,* Id. 150; *Cutting* v. *Seabury,* 1 Spr. 525; *Long Island Transp. Co.* 5 FED. REP. 599; *The Garland,* Id. 984; *Holmes* v. *O. & C. R. Co.* Id. 75; *The Sylvan Glen,* 9 FED. REP. 335; *The Favorite,* 12 FED. REP. 213; *The Epsilon,* 6 Ben. 379; *Taylor* v. *Dewar,* 117 E. C. L. 63.

The rule of the common law that no redress can be had for such injuries is peculiar to that jurisprudence, and does not obtain in the admiralty. *Sullivan* v. *Railroad Co.* 3 Dill. 337; *De Lovio* v. *Boit,* 2 Gall. 472; *The Chas. Morgan,* 18 Law Reg. 624; Ben. Adm. 149. In *The Towanda,* decided in this circuit, the court said: "While the weight of authority in common-law courts is, perhaps, in favor of the principle, it has not been adopted with uniform sanction even by them," and declaring that "the question is one of general jurisprudence," the court would not recognize the common-law rule. So in *The Sea Gull, The Highland Light,* and *The Chas. Morgan, supra.* It is believed that the admiralty courts of the United States and of England have not followed the common-law rule in a single case.

The libel complains of a maritime tort, and "the jurisdiction of the American admiralty comprehends all maritime torts and injuries." "It is co-extensive with the subject, and depends upon the locality of the wrong, not upon its *extent, character, or the relations of the persons injured.*" *De Lovio* v. *Boit, The Towanda,* and *The Highland Light, supra.*

"A maritime lien arises against a ship for the damages resulting from a tort committed by it. This lien travels with the thing wher-

·ever it goes.. The lien and the proceeding *in rem* are correlative—where one exists the other can be taken." *The Rock Island Bridge*, 6 Wall. 215; *Ins. Co.* v. *Baring*, 20 Wall. 163; *The 'Gen. Smith*, 4 Wheat. 438.

As to the statutory or laches bar of the action: (*a*) The supreme court in *The Key City*, 14 Wall. 660, say that "the courts of admiralty are not governed by any statute of limitations in the enforcement of maritime liens. (*b*) That no arbitrary or fixed period of time has been or will be established as an inflexible rule, but that the delay which will defeat such a suit must in every case depend on the peculiar equitable circumstances of that suit. (*c*) That where the lien is to be enforced to the detriment of a purchaser for value, without notice, there will be a more rigid scrutiny of the delay than when the claimant is owner at the time the lien accrued."

State statutes of limitation are not observed in the admiralty. 2 Pars. Shipp. 361; *Willard* v. *Dorr*, 3 Mason, 95; *Brown* v. *Jones*, 2 Gall. 481. "The matter of limitations in the admiralty is left to the discretion of the court, which can best judge, in view of all the circumstances, whether the demand be so stale as to be neglected and abandoned. This discretion is not mere caprice, but the sound legal discretion of cultivated reason, in which the circumstances of the parties, the property, and the transaction are to be carefully weighed." Ben. Adm. § 575.

The numerous cases holding that " the lien is not lost by delay in enforcing it, where no third person has acquired any right to the vessel, and the owner has not been injured by the delay, are referable to the above rule." *The Canton*, 1 Spr. 437; *The Mechanic,* 2 Curt. 404; *The Bold Buccleugh*, 3 Wm. Rob. 29; *The Europa*, 2 Lush. 93; *The Louisa*, 2 Wood. & M. 60. In *The Utility*, Blatchf. & H. 222, it was said that "the only general restriction upon the right to sue, adopted by the admiralty, is that it will not take cognizance of stale demands." And in the *D. M. French*, 1 Low. 44, the cause of action was four years one month old, and there was a sale without notice. Held, that " where no injury would result from granting the remedy, and there is reason to believe that no evidence has been lost by the delay, the lienholders may sustain a suit after a very considerable period; even, in the United States, after the lapse of the time prescribed by the statutes of the state as a peremptory bar to similar actions."

The libelants, therefore, encounter no bar to their action unless the court, exercising its discretion, interpose one. There is no rea-

son why this should be done, but these weighty reasons for permitting the actions to go on: There has been no sale of the vessel; nor has evidence been lost, (it is all preserved in the records of this court;) nor, viewing the facts, has there been delay, for the test case was vigorously pressed from the time of collision; nor were the claims abandoned, for in the test case it was expressly averred that they would be pursued.

*Thomas Hart, Jr.*, for respondents.

The libel should be dismissed, because there is no law under which it is maintainable, except the statute law of Massachusetts and Pennsylvania, and by both it is barred by the limitation of time therein provided. The death of a person upon navigable waters, caused by the negligence of another, cannot be complained of as an injury to be redressed under the general maritime law. Such a right depends solely upon the statute laws governing the locality where the death took place; or, if upon the high seas, upon the statute laws of the state to which the vessel causing the injury belonged. Both the states of Maryland and Pennsylvania bar this action. The libelants are the persons entitled to sue, by the Pennsylvania statute. See *Iron Company* v. *Rupp*, 39 Leg. Int. 337.

The jurisdiction of the admiralty is not denied. The right given by the Pennsylvania statute may, within the year, be enforced in the admiralty. *Ex parte McNeil*, 13 Wall. 243; *Railroad Co.* v. *Whitton*, 13 Wall. 270. It was in accordance with this principle that the writ of prohibition was refused in *Ex parte Gordon*, 13 Reporter, 417. None of the cases sustain a libel in a case like this. In *The Towanda*, 34 Leg. Int. 394, (1877,) the judgment was right, for the ship was a Philadelphia vessel and the statute applied. *The Towanda* cannot be sustained on any other ground. The common-law cases cited therein are not now law. See *Green* v. *Hudson R. R. Co.* 2 Keyes, 294; *Ins. Co.* v. *Brame*, 95 U. S. 754; *Dennick* v. *Railroad Co.* 103 U. S. 11; *Osborn* v. *Gillett*, L. R. 8 Exch. 88; Amer. Law Rev. 1882, p. 128.

*Cutting* v. *Seabury*, 1 Spr. Dec. 525, was in 1860, and is opposed by *Crapo* v. *Allen*, Id. 184.

No distinction was attempted between common law and admiralty law on this subject. *The Sea Gull*, 2 Amer. Law T. 15, (1869,) is responsible for the error on this subject. The decision is made without examination or discussion, and, as far as it goes upon authority, is baseless. It should be rejected. *The Highland Light*, 2 Amer. Law

T. Rep. 118, went on the ground of the locality of the wrong, and the United States and Maryland statutes.

In all the recent cases, state statutes governing the locality of the tort, or the vessel committing it, existed, and the decisions went wholly or partially thereon. This was so in *Holmes* v. *O. & C. Ry. Co.* 5 FED. REP. 75; *The Clatsop Chief*, 7 FED. REP. 163; *Long Island T. Co.* 5 FED. REP. 599; *The Charles Morgan*, 18 Amer. Law Reg. 624; *The Garland*, 20 Amer. Law Reg. 742; (see note to this case, page 750.) When cause of action has arisen on high seas, the law of the state of the offending vessel has been applied. *McDonald* v. *Mallory*, 77 N. Y. 546; *Crapo* v. *Kelly*, 16 Wall. 610. *The Sylvan Glen*, 9 FED. REP. 335, is a direct authority for respondents; and so is *Armstrong* v. *Beadle*, 5 Sawy. 484. English admiralty law is with respondents. *Smith* v. *Brown*, L. R. 6 Q. B. 729; *The Guldfaxe*, L. R. 2 Adm. 325; *The Explorer*, L. R. 3 Adm. 289; *The Franconia*, L. R. 2 Prob. Div. 163. The civil law did not give an action in such a case. Note to *The Garland*, 20 Amer. Law Reg. 747; *Hubgh* v. *Railroad*, 6 La. Ann. 498; *Herman* v. *Railroad*, 11 La. Ann. 5.

After a partial oral argument, McKENNAN, J., (BUTLER, J., also sitting,) said that the court would not disturb the decision in the case of *The Towanda;* but that the case was doubtful, and it should go to the supreme court. The decree of the district court was, therefore, affirmed, and the following conclusions of law were subsequently filed:

1. By the statute law of the commonwealth of Massachusetts, (St. 1860, c. 63, §§ 98, 99,) it is provided in cases of death arising from negligence that a fine may be recovered by indictment and paid to the executor or administrator, and that such indictment shall be prosecuted within one year from the injuries causing the death.

2. By the statute laws of Pennsylvania, acts of April 15, 1851, and April 26, 1855, it is provided that the action therein given in cases of death occasioned by negligence shall be brought within one year after the death, and not thereafter.

3. In the admiralty courts of the United States, the death of a human being upon the high seas, or waters navigable from the sea, caused by negligence, may be complained of as an injury, and the wrong redressed under the general maritime law.

4. The right of the libelants does not depend upon the statute law of either the states of Massachusetts or Pennsylvania, and the limitation of one year in the statutes of those states does not bar this proceeding.

5. Although an action in the state courts of either Massachusetts or Pennsylvania would be barred by the limitation expressed in the statutes of those states, the admiralty is not bound thereby, and, in this case, will not follow the period of limitation therein provided and prescribed.

6. The drowning complained of was caused by the improper navigation, negligence, and fault of the said steamer, producing the collision aforesaid, and the libelants are entitled to recover.

7. As there are no innocent rights to be affected by the present proceeding, and no inconvenience will result to the respondents from the delay attending it, the action, if not governed by the statutes aforesaid, is not barred by the libelants' laches.

*Eo die.* An appeal was entered to the supreme court of the United States.

---

LIGHT HUNDRED AND FORTY-ONE TONS OF IRON ORE.*

(*District Court, E. D. New York.* January 29, 1883.)

1. PRACTICE—SUPPLEMENTAL LIBEL—EXCEPTIONS.

A libel having been filed claiming freight and demurrage under a charter-party, the libelant thereafter filed a supplemental libel, setting up the same and additional facts, and claiming the same freight and demurrage and additional demurrage, to which supplemental libel the claimant excepted on the ground that it set forth facts occurring after the suit was commenced. *Held,* that as it did not appear upon the face of the supplemental libel that any of the facts therein stated occurred subsequent to the commencement of the suit, the exceptions must be overruled.

2. SAME—MOTION TO STRIKE OUT SUPPLEMENTAL LIBEL.

Where it appeared that the original libel was filed and process issued and served on September 22d, and the supplemental libel, claiming an additional amount, was filed October 4th, before the return of process, no claimant having appeared, and on October 6th the claimant appeared and procured a discharge of the property by depositing in court money to the amount claimed in the supplemental libel, *semble,* that a motion to strike out the supplemental libel on the ground that it set forth facts occurring after the suit was commenced, would be denied, on the ground that the claimant would be deprived of no right by allowing it to stand, while to strike it out would increase expense without benefit, and would also deprive the libelant of the security which the claimant had given for the demand made in the supplemental libel.

As to when a proceeding in admiralty is deemed to be commenced, *quære.*

In Admiralty.

*Reported by R. D. & Wyllys Benedict.